ABNER L. KNOWLTON *v.* TOWN OF SANBORNTON.

The fact that a town had paid a uniform bounty to sundry persons who had enlisted in the field into the military service of the United States, and were counted on the town quota, is evidence on which a jury might infer a promise by the town to pay the same sum to another person enlisting at the same time and under the same circumstances.

Where the vote of a town authorized its selectmen to take measures to fill the town quota of thirty men and to pay bounties for that purpose, the authority of the selectmen is exhausted when such quota is filled, and their contract for further enlistments will not bind the town.

ASSUMPSIT to recover a town bounty. A legal town meeting was duly called and held in the town of Sanbornton on the tenth day of December, 1863. In the warrant calling said meeting were the following articles: "2d. To see what amount of money the town will vote to pay to each volunteer who may enlist and be mustered into the service of the United States, under the last call of the President, toward making this town's quota (not exceeding thirty men,) in addition to the national and State bounties, or to see if the town will vote to authorize the selectmen to advance the said bounties to the volunteers, taking an assignment of the bounties for the benefit of the town, and paying such further sum as may be necessary to procure volunteers to fill our quota, not exceeding three hundred dollars beside the bounties to each, or to take any other action in relation thereto."

"3d. To see what sum of money shall be raised, and how it shall be raised, to carry out the intention of the foregoing article."

At said meeting, upon the recommendation of a committee, the town voted:

"That the selectmen be ordered to take immediate measures to fill our quota, by offering such bounties as they consider necessary to raise the volunteers, and authorizing them to advance the bounties, and paying such further sum as may be necessary to each, not exceeding three hundred dollars beside the State and national bounties, and that the selectmen be authorized to borrow, on the credit of the town, a sum not exceeding eighteen thousand dollars for said purpose."

The selectmen made no public proclamation as to the bounty the town would pay, neither did they authorize any one to make contracts for the enlistment of men ; but they put in thirty men, making a contract with each man as to the amount of bounty he was to receive ; the bounty paid was from two to three hundred dollars each, beside advancing the State and national bounties. They expended in this way seventeen thousand dollars. The last one of the thirty men was mustered Feb. 11, 1864. These men were enlisted under the call for troops of Oct. 17, 1863.

Beside the thirty men already mentioned, sixteen men enlisted in the field between Dec. 19, 1863, and Jan. 13, 1864, to whom the town paid two hundred and seventy-five dollars each. These sixteen men were paid their town bounties at various times, as they called for the same, and all were paid subsequent to March 14, 1864. These sixteen men include all the veterans whose enlistment and credit have come to the knowledge of the selectmen, except this plaintiff, and possibly one or two others. Most of these were with their regiments in the field, and some of them were serving with the plaintiff, in South Carolina, at the time they enlisted. They were assigned to the quota of the town, according to the law then in force.

The plaintiff was a resident of Sanbornton, and was with his regiment, at Morris Island, South Carolina, on the first day of January, 1864, and on that day re-enlisted, with others, as a veteran soldier, and was duly assigned to the town of Sanbornton, and was counted in the number of men with which the town was credited at the Adjutant-General's office of New Hampshire and at the War Department at Washington. The time of the return of the muster-roll, showing the plaintiff's enlistment, to the Adjutant-General's office, does not appear further than that it was some time prior to March 20, 1864. The plaintiff had knowledge, but not derived directly from the selectmen, of the action of the town in relation to soldiers' bounties. The deficiency of the town of Sanbornton, under the two calls of Oct. 17, 1863, and Feb. 1, 1864, was seven men, not including veterans re-enlisted in the field, and the quota of the town under the call of March 14, 1864, was twenty men, making twenty-seven men due from the town at that date.

The selectmen had no knowledge of the enlistment and credit of the plaintiff until some time subsequent to April 1, 1864, when they were putting in men under the call of March 14, 1864. At that time the plaintiff claimed of the town a bounty, when one of the selectmen, in company with the plaintiff, went to the office of the Adjutant-General, in Concord, and was there informed that the plaintiff had been credited to the quota of another town, and not to the town of Sanbornton ; but

the records now show that, in fact, the plaintiff's enlistment had then been credited to said Sanbornton.

On the final adjustment of quotas, at the close of the war, it was found that Sanbornton had put in about ten men more than their united quotas on all the calls. There was never any promise, by said town, of a payment of bounty to the plaintiff, other than may be inferred from the foregoing facts.

Upon these facts, it is agreed that such a judgment be rendered, or the case discharged, as the court may order. And it is further agreed that, upon the hearing, either party may refer to any proclamation or public record.

*Barnard & Sanborn*, for plaintiff.

*C. C. Rogers* and *Eastman, Page & Albin*, for defendant.

BELLOWS, J. Waiving for the present the inquiry whether the selectmen had the power, under the circumstances disclosed, to bind the town by an agreement to pay the plaintiff a bounty for enlisting, we propose to consider whether there is evidence of such an agreement.

On this point it appears that about the time the plaintiff enlisted, the selectmen were engaged in obtaining persons to enlist, to be counted on the quota of Sanbornton, and that on the first day of January, 1864, the plaintiff then being with his regiment in South Carolina did enlist as a veteran soldier, and was actually counted on the quota of Sanbornton. Between December 19, 1863 and January 13, 1864, sixteen, or perhaps one or two more, enlisted in the field, and the sixteen were paid their town bounties, as they called for them, to the amount of $275 each. All were paid subsequent to March 14, 1864. Some of these sixteen persons were serving with the plaintiff in South Carolina when they enlisted.

The plaintiff had knowledge of the action of the town in relation to the bounties, but not derived directly through the selectmen. After April 1, 1864, the plaintiff claimed a bounty of the town, and before that the selectmen had no knowledge of plaintiff's enlistment and credit on the town quota, and at that time one of the selectmen went with the plaintiff to the Adjutant-General's office and were incorrectly informed that he was credited to some other town and not to Sanbornton.

The evidence tends to prove that the plaintiff enlisted under the same circumstances, substantially, as did the sixteen other veterans who received the bounty from the town. That being the case the payment of the bounty would be in the nature of an admission that they were entitled to it, and that the town was liable to pay; and we think it would be competent for the jury to infer a promise to pay the plaintiff. It would be like an admission of a settlement of a pauper by supporting him. *Hopkinton* v. *Springfield*, 12 N. H. 328; *Pittsfield* v. *Barnstead*, 40 N. H. 478. So where the question is whether a defendant was liable as partner or joint contractor, the recognition and payment of other claims of the same character might properly be considered.

In the present case, from the admission that the town was liable to

pay bounties to the sixteen recruits, the jury might be justified in inferring its liability to pay the plaintiff who occupied the same position. They might find that it was held out to all these recruits with the assent of the agents of the town that a bounty of $275 would be paid to each.

The next question is whether the selectmen had power to make such an agreement and bind the town. The vote of December 10th, 1863, authorized the selectmen to take measures to fill the town quota, not exceeding thirty men, under the last call of the president. The authority of the selectmen is limited, we think, to filling the quota under the last call of October 17, 1863. Such is the article in the warrant, and the vote could not go beyond that.

If then, the quota had been filled previous to the plaintiff's enlisting, the authority of the selectmen must be considered as exhausted. On that point it appears that the selectmen put in the thirty men, the last one having been mustered in February 11, 1864, five or six weeks after the plaintiff enlisted; but the defendant's counsel says that it appears by the town records which are referred to, that this last recruit received his bounty of the town in December, 1863. If so, the power of the selectmen would seem to have been exhausted before the plaintiff enlisted, and consequently he cannot recover. Unless, then, a trial by jury is decreed to try the question whether the quota was filled before the plaintiff enlisted, there must be

*Judgment for defendant.*